IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DOLORES LUCERO,

    Plaintiff,

v.                                                                                        Civ. No. 19-1016 GBW

ANDREW SAUL,
*Commissioner of the*
*Social Security Administration*,

    Defendant.

## ORDER DENYING REMAND

This matter comes before the Court on Plaintiff's Motion to Remand the Social Security Agency ("SSA") decision to deny Plaintiff Supplemental Security Income ("SSI"). *Doc. 25*. For the reasons explained below, the Court DENIES Plaintiff's motion and AFFIRMS the judgment of the SSA.

**I.**     **PROCEDURAL HISTORY**

Plaintiff filed an initial application for SSI on November 21, 2016, alleging disability beginning July 31, 2011. Administrative Record ("AR") at 12. Plaintiff's application was denied on initial review on March 13, 2017, and again on reconsideration on July 5, 2017. AR at 66–79, 80–97. On July 13, 2018, a hearing was held by an Administrative Law Judge ("ALJ"). AR at 30–65. At the hearing, Plaintiff

amended her disability onset date from July 31, 2011, to the application date of November 21, 2016.  AR at 33–34.

The ALJ issued an unfavorable decision on December 12, 2018.  AR at 9–24.  Plaintiff sought review from the Appeals Council, which denied review on September 7, 2019, making the ALJ's denial of SSI the final decision of the Commissioner.  AR at 1.  On October 31, 2019, Plaintiff filed suit in this Court, seeking review of the ALJ's decision.  *Doc. 1*.

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency."  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotations omitted).

"Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Casias*, 933 F.3d at 800 (internal quotations omitted).  "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  "[I]n addition to

discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

### III.   ALJ EVALUATION

#### A. Legal Standard

For purposes of both Social Security Disability Insurance benefits and Supplemental Security Income, an individual is disabled when he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520.[1] If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id*. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity;" (2) he has a "severe medically

---

[1] The five-step test for determining disability is the same for both disability benefits and SSI, although the test is codified in two separate sections of the Code of Federal Regulations. 20 C.F.R § 404.1520 governs disability benefits; § 416.920 governs SSI.

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in

the national economy, considering the claimant's residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### B. The ALJ's Decision

On December 12, 2018, the ALJ issued a decision denying Plaintiff's application for SSI. *See* AR at 12–24. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 21, 2016. AR at 14.

At step two, the ALJ determined that Plaintiff had the following severe impairments: cervical and lumbar degenerative disc disease, moderate carpal tunnel syndrome, anxiety, and post-traumatic stress disorder. AR at 14. The ALJ considered whether Plaintiff had the medically determinable impairment of depression but determined that the record lacked supporting evidence. AR at 14–15. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the severity of an impairment in the Listings. AR at 15.

At step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with the following additional limitations: lifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently; sitting for six hours total during an eight-hour workday; standing and walking for four hours at a time or six hours off-and-on; fingering with both left and right hands

frequently; occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; occasionally balancing, stooping, kneeling, crouching, and crawling; occasionally working at unprotected heights and with moving mechanical parts; and occasionally interacting with coworkers, supervisors, and the public. AR at 17.

The ALJ determined, also at step four, that Plaintiff had the RFC to return to her past relevant work as an accounts receivable clerk (a semiskilled position at Specific Vocational Preparation level ("SVP") 5). AR at 21. The ALJ proceeded to step five to make the alternative finding that Plaintiff had the RFC to perform other work that exists in significant numbers in the national economy, including as an addresser, document preparer, table worker, survey system monitor, and escort vehicle driver, all of which are unskilled positions at SVP 2. AR at 24; SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000) ("[U]nskilled work corresponds to an SVP of 1-2."). The ALJ concluded that Plaintiff was not disabled within the SSA's definitions. *Id*.

## IV.  PARTIES' POSITIONS

Plaintiff asserts that the ALJ erred by (1) failing to incorporate all of Plaintiff's mental limitations in the RFC; (2) failing to consider Plaintiff's history of blurry vision and decreased hearing; and (3) failing to investigate and develop the record regarding Plaintiff's diagnosis of fibromyalgia. *Doc. 25* at 18–22.

Defendant responds that the ALJ's decision should be affirmed because (1) the ALJ's RFC assessment was supported by substantial evidence; (2) the ALJ's duty to develop the record does not extend to consideration of impairments unsupported by the record; and (3) any error in failing to incorporate greater limitations and/or specific impairments into the RFC was harmless. *Doc. 27* at 3–10.

V.   ANALYSIS

### A. The ALJ Did Not Err in Failing to Include Additional Mental Limitations in Plaintiff's RFC.

Plaintiff contends that the ALJ failed to engage in the "rigorous" analysis required at step four of the sequential evaluation by not addressing the mild mental limitations he found at step three. *Doc. 25* at 18. She further explains that the fact that the limitations were found to be mild did not excuse the ALJ from the duty to address them. *Id.* at 20 (citing *Wells v. Colvin*, 727 F.3d 1061, 1069–71 (10th Cir. 2013)).

The RFC assessment is "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1986). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Mental limitations identified at step two of the sequential evaluation process "are not an RFC assessment." *Id.* at *4. A finding of a mild to

7

moderate limitation at step two "does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015); *see also Wells*, 727 F.3d at 1068–69.

At step three, the ALJ determined that Plaintiff had mild limitations in (1) understanding, remembering, or applying information; (2) concentrating, persisting, or maintaining pace; and (3) adapting or managing oneself. AR at 15–16. In formulating Plaintiff's RFC, the ALJ considered and discussed the evidence regarding Plaintiff's mental limitations. The ALJ considered Plaintiff's function report, in which she described her problems with concentration, memory, and following instructions. AR at 18 (citing AR at 208–16). The ALJ considered the mental evaluation performed by Dr. Steinman, which found limited judgment and difficulties with memory but adequate concentration. AR at 19 (citing AR at 290, 292–93). The ALJ also considered other medical records showing that Plaintiff was found to have good judgment and insight. AR at 20 (citing AR at 456, 488, 506). Additionally, the ALJ considered Plaintiff's daily activities, including her custody of a three-year-old grandson with mental health needs. AR at 20. Having considered all this evidence, the ALJ concluded that "the record as a whole contains a . . . lack of noteworthy mental status deficits, which is not reflective of the substantial limitations alleged." AR at 20. In sum, the ALJ properly considered the

evidence of Plaintiff's mental limitations and concluded, based on substantial evidence, that no work-related limitations were required.

Plaintiff also argues that the ALJ's failure to include additional mental limitations was erroneous because, despite affording "great weight" to Dr. Steinman's opinion, the ALJ incorporated fewer limitations than Dr. Steinman assessed. *Doc. 25* at 19. An ALJ is required to "consider all medical opinions in the record" and discuss the weight assigned to each opinion. *Quintero v. Colvin*, 567 F. App'x 616, 619 (10th Cir. 2014) (unpublished). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. Notably, however, the "RFC assessment is an administrative, rather than a medical, determination." *McDonald v. Astrue*, 492 F. App'x 875, 885 (10th Cir. 2012) (unpublished). Ultimately, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

Warren Steinman, Ph.D., completed a mental status examination on Plaintiff on July 1, 2013. AR at 290–94. Among other findings, Dr. Steinman concluded that Plaintiff could "understand most instructions" and had limited judgment. AR at 294. In assigning great weight to Dr. Steinman's opinion, the ALJ emphasized the findings that Plaintiff "was able to understand most instructions and carryout [*sic*] the tasks

required of her as long as she was physically capable; able to interact effectively; [and] seemed adaptable to the changes she might encounter." AR at 21. Plaintiff argues that Dr. Steinman's finding that she could understand "most" instructions required a limitation in the RFC. *Doc. 25* at 19. Evidently, the ALJ did not agree. To the contrary, it appears that the ALJ understood this finding as requiring *no* work-related limitation in understanding instructions, which is not an unreasonable interpretation of an assessment that a claimant can follow "most" instructions.[2] Moreover, as the person charged with formulating Plaintiff's RFC, the ALJ was not required to adopt an instruction-related limitation even if Dr. Steinman's opinion might have supported one.

Regarding the finding of limited judgment, the ALJ provided further context on how he considered Dr. Steinman's opinion, noting that it was given three years before the alleged onset date and that the record following the alleged onset date was "devoid of any ongoing formal mental health treatment." AR at 21. The ALJ went on to observe that medical records from the alleged period of disability noted that Plaintiff's judgment and insight were "good." *Id.* (citing AR at 456, 488, 506). From the ALJ's discussion, it is apparent that, while he found Dr. Steinman's opinion largely consistent with the medical record, adjustments were necessary to reflect the more recent evidence, including the evidence concerning Plaintiff's judgment. Thus, although Dr.

---

[2] *See Most*, Merriam-Webster Dictionary Online (last visited Feb. 11, 2021) (defining "most" as "the majority of" or "to a very great degree").

10

Steinman's opinion could have supported a work-related limitation on the use of judgment, the ALJ, in his province as the determiner of Plaintiff's RFC, concluded that none was necessary.

The ALJ adequately explained how he considered Dr. Steinman's findings that Plaintiff could understand most instructions and had limited judgment. Because the ALJ considered the evidence of Plaintiff's mental impairments, applied the correct legal standards, and came to conclusions that were supported by substantial evidence, he did not commit reversible error in declining to include additional mental limitations in Plaintiff's RFC.

### B. **The ALJ Satisfied His Duty to Develop the Record Consistent with the Issues Raised.**

Plaintiff's next point of error is that the ALJ was required to develop the record pertaining to evidence in the record showing complaints of blurry vision and decreased hearing.[3] *Doc. 25* at 21. A claimant bears the burden of providing evidence to show a severe impairment. *Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009). "Ordinarily, the claimant must in some fashion raise the issue sought to be developed, which, on its face, must be substantial." *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citations

---

[3] In her reply, Plaintiff also mentions complaints of headaches. *Doc. 30* at 10–11. Plaintiff does not raise any claim of error regarding evidence of headaches in her motion. *See generally doc. 25*. Arguments raised for the first time in a reply brief are deemed waived. *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009). Therefore, the Court will not consider any argument regarding Plaintiff's complaints of headaches.

omitted). The ALJ has a reciprocal duty "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Id.* (citations omitted). "This duty is not a panacea for claimants, however, which requires reversal in any matter where the ALJ fails to exhaust every potential line of questioning." *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994). The "important inquiry is whether the ALJ asked sufficient questions to ascertain (1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375 (10th Cir. 1992).

At the hearing, the ALJ asked Plaintiff to describe her impairments from most to least severe. AR at 37–38. Plaintiff discussed pain in her spine, hands, wrists, ankles, knees, neck, shoulders, arms, and her lower torso. AR at 38–42. As Plaintiff described each of these impairments, the ALJ asked about Plaintiff's treatment history. *Id*. Plaintiff also discussed her sleep disruptions and inability to stand or sit for long periods of time due to pain. AR at 43. The ALJ also asked Plaintiff about her mental impairments, and Plaintiff described her depression and post-traumatic stress disorder. *Id*. The ALJ next asked Plaintiff about her daily activities. AR at 44–49. Plaintiff discussed her daily activities, including caring for her grandson, driving to and from appointments, grocery shopping, maintaining her home, and going to church. *Id*.

Throughout this discussion, Plaintiff mentioned ways that her pain has restricted her daily activities. *Id*. The ALJ then permitted Plaintiff's counsel to ask further questions. AR at 49. Plaintiff's counsel asked about Plaintiff's pain in her upper extremities, neck, shoulders, and lower back. AR at 49–52. Plaintiff's counsel also asked about Plaintiff's daily activities and how her pain restricted them. AR at 52–54.

As described above, the ALJ satisfied his duty to develop the record through his questions at the hearing. The ALJ used a combination of open-ended and specific questions to elicit testimony on Plaintiff's impairments and their effect on her daily activities. At no point during the hearing did Plaintiff mention anything about blurry vision or decreased hearing.

Furthermore, the intermittent references to blurry vision and decreased hearing in the record are not "substantial" on their face. *See Hawkins*, 113 F.3d at 1164. Plaintiff attempts to suggest a substantial issue by citing to a plethora of records purportedly showing ongoing complaints of blurry vision and decreased hearing. *See doc. 25* at 21 (citing AR at 364–68, 379–84, 436–38, 454–59, 461–64, 466–69, 487–88, 550–54, 627–30, 721). Many of these records show that Plaintiff *denied* problems with her vision and hearing. *See, e.g.,* AR at 463 ("Decreased hearing DENIES."); AR at 467 ("Blurred vision DENIES. Double Vision DENIES. Use of glasses or contacts DENIES."); AR at 721 (reporting a "negative" for blurred vision and hearing problems). Some of these

records contain no discernible references to vision or hearing. *See* AR at 627–30 (physical therapy record describing Plaintiff's issues with mobility and pain).

Plaintiff points out that, in her function report, she checked off seeing and hearing on a list of abilities affected by her impairments. AR at 213. However, she did not describe any hearing problems in response to any of the open-ended questions on the report. AR at 208–15. She did report "poor eyesight" as a reason why she keeps trips to the store under one hour and does not watch television very much. AR at 210, 212. However, she did not mention her poor eyesight when reporting that she could drive, manage money, and read for several hours per day. *Id*.

The ALJ did not fail in his duty to develop the record by not asking questions pertaining to impairments or symptoms that Plaintiff did not herself raise and that were not substantial on their face.

### C. The ALJ's Failure to Discuss the Evidence of Fibromyalgia Was No More Than Harmless Error.

Plaintiff's final argument is that the ALJ erred by failing to discuss Plaintiff's diagnosis of fibromyalgia. *Doc. 25* at 21–22. Plaintiff further argues that the ALJ failed in his duty to investigate and develop the record by relying on the statement of her former counsel at the hearing denying a proper diagnosis of fibromyalgia. *Id.* at 22.

The SSA has provided guidance on how to evaluate evidence of fibromyalgia. *See* SSR 12-2p, 77 Fed. Reg. 43,640 (July 25, 2012). A claimant has the medically

determinable impairment of fibromyalgia if she has all three of the following: (1) a history of widespread pain (meaning pain on both the right and left side of the body and both above and below the waist); (2) at least 11 of 18 positive tender points upon physical examination; and (3) evidence that other disorders were excluded as the cause of the claimant's symptoms or signs. *Id.* at 43,641–42. Alternatively, a claimant may have the medically determinable impairment of fibromyalgia if, in lieu of the tender-point examination, the claimant has repeated manifestations of at least six symptoms, signs, or co-occuring conditions indicative of fibromyalgia. *Id.* at 43,642. When a claimant is found to have the medically determinable impairment of fibromyalgia, the ALJ must consider the claimant's symptoms when determining the RFC (as he must do with each impairment he finds at step two). *Id.* at 43,644.

Plaintiff points to a single medical record to support her contention that the ALJ erred by not discussing fibromyalgia. *See doc. 25* at 22 (citing AR at 591–93). This record states that Plaintiff was "to be evaluated for fibromyalgia," based on the presence of widespread pain and an unspecified number of positive tender points. AR at 591. This record does not indicate whether other causes for Plaintiff's symptoms were excluded. *See* SSR 12-2p, 77 Fed. Reg. at 43,642. Plaintiff points to some x-rays and MRIs to argue otherwise. *Doc. 25* at 22 (citing AR at 284–85, 364–68). But those records all point to a diagnosis of degenerative disc disease. *See* AR at 284–85, 364–68. The ALJ found that

Plaintiff had the severe impairment of degenerative disc disease and incorporated several limitations in the RFC to account for the symptoms of that impairment. AR at 14, 17. Plaintiff does not argue that any of her symptoms of fibromyalgia were omitted from the RFC determination. Thus, not only is there no diagnosis commensurate with SSR 12-2p, but it is unclear that such a diagnosis would have changed the outcome.

      Regarding the ALJ's duty to develop the record, he asked Plaintiff's counsel at the hearing whether Plaintiff had "a diagnosis commensurate with our rules for fibromyalgia." AR at 42. Plaintiff's then-counsel responded, "Not commensurate with the rules. There is mention of widespread [pain] throughout the body likely due to central cervical and lumbar spine spondylosis . . . but it does not have the further requirements." *Id*. Later, Plaintiff's counsel noted that Plaintiff kept referring to her symptoms as "fibromyalgia" and asked about her use of the term. AR at 50. Plaintiff replied that she did now know the correct medical terms to describe her impairments. AR at 51. Thus, not only Plaintiff's counsel but Plaintiff herself appeared to deny a diagnosis of fibromyalgia. The ALJ's duty to develop the record does not extend to impairments that a claimant denies. *Cf. Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that

the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation.").

Based on the evidence in the record, as well as the statements by Plaintiff and her counsel at the hearing, the Court concludes that no reasonable factfinder would have come to a more favorable conclusion regarding the evidence of fibromyalgia. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (approving the harmless-error doctrine "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way"). Therefore, the ALJ's failure to discuss fibromyalgia in his decision was no more than harmless error.

## VI. CONCLUSION

For the foregoing reasons, the Court finds no reversible error in the ALJ's decision. Therefore, the Court DENIES Plaintiff's Motion to Reverse and Remand (*doc. 25*) and AFFIRMS the Commissioner's decision.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**